IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DOMINIQUE J., o.b.o. K.R., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | No. 18 C 8541 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security, [1] ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION AND ORDER[2]

On October 1, 2013, the claimant, Dominique J. ("Plaintiff"),[3] applied for supplemental security income ("SSI") on behalf of her minor daughter, K.R., alleging that K.R became disabled on November 1, 2011. (R. 113.) After a hearing, the administrative law judge ("ALJ") issued a written opinion on May 19, 2016 denying Plaintiff's application for benefits. (R. 133.) Plaintiff

---

[1] The Court substitutes Andrew M. Saul for his predecessor, Nancy A. Berryhill, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[2] On February 14, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to a United States Magistrate Judge for all proceedings, including entry of final judgment. (D.E. 10.) On May 31, 2019, this case was reassigned to this Court for all proceedings. (D.E. 17.)

[3] The Court in this opinion is referring to Plaintiff by her first name and first initial of her last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id*. A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id*., citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court is abiding by IOP 22 subject to the Court's concerns as stated. The Court's understanding is that the claimants are not anonymous litigants, in that their names in all of these matters brought for judicial review under the Social Security Act are otherwise available upon a review of the public docket.

appealed the denial, and on May 4, 2017, the Appeals Council vacated the ALJ's decision and remanded the case for a new hearing. (R. 140.) The ALJ held a second hearing on January 19, 2018, and on March 9, 2018, the ALJ issued another decision denying Plaintiff's application for benefits. (R. 39.) On October 25, 2018, the Appeals Council denied Plaintiff's request for review of this decision (R. 1), making the ALJ's decision the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).

On April 17, 2019, Plaintiff filed a brief seeking reversal or remand of the Commissioner's decision denying her application for SSI. (D.E. 13.) The matter is now fully briefed.

**I.    K.R.'s Medical Record**

On April 23, 2010, K.R. was born, at term, with hypoxic ischemic encephalopathy.[4] She was treated "and did well;" her subsequent EEG and neonatal screen were normal, although an MRI of her brain "at first showed increased cortical white matter[,] signal[ing] abnormality." (R. 388.) On December 9, 2011, K.R. had a speech evaluation; speech therapy was recommended, but she was discharged from speech therapy due to inability to attend appointments. (*Id*.) On February 4, 2013, K.R. had another speech evaluation; she was found to have "age-appropriate development" but was referred for further speech and hearing evaluations. (R. 388-90.) K.R. also received treatment for mild asthma and episodic wheezing. (R. 528-29, 532.)

In July 2013, K.R. was admitted to the hospital with an apparent seizure, after a sudden change in mental status, loss of awareness, and loss of muscle tone. (R. 454.) K.R.'s head CT scan

---

[4]"Hypoxic ischemic encephalopathy (HIE) is a type of brain dysfunction that occurs when the brain doesn't receive enough oxygen or blood flow for a period of time. Hypoxic means not enough oxygen; ischemic means not enough blood flow; and encephalopathy means brain disorder. . . . Some children will experience no health issues—or only mild or moderate effects—from HIE, while others have much more severe and permanent disability." https://www.ucsfbenioffchildrens.org/conditions/neonatal_hypoxic_ischemic_encephalopathy/.

2

and a routine EEG were normal,[5] but she was discharged home with a prescription for diazepam, a rectal gel for Plaintiff to apply if K.R. had a seizure lasting more than five minutes. (R. 454-55, 499.) On September 24, 2013, K.R. had another seizure episode, but she recovered after her mother gave her a dose of diazepam. (R. 429.) Pediatric neurologist Herbert Ezugha, M.D., ordered a sleep deprived EEG to determine if K.R. was at risk of recurrent seizures. (R. 499.) On October 1, 2013, K.R. received an awake and asleep EEG, which showed "abnormal" results. (R. 501-02.) She was prescribed Topamax, a daily medication to treat and prevent seizures. (R. 504.)

In December 2013, K.R. received another speech screening and was referred for a formal speech and language evaluation to assess her deficits in expressive vocabulary, understanding of spoken language, and intelligibility. (R. 538.) Speech language pathologist Kathryn Villasenor, M.S., conducted the evaluation and diagnosed K.R. with speech sound delay and mild receptive-expressive delay. (R. 551.) Ms. Villasenor recommended weekly speech therapy. (R. 559.)

In December 2013, a non-examining State Agency physician reviewed K.R.'s medical history as part of her application for benefits. The physician opined that K.R. had a severe speech and language impediment and non-severe minor motor seizures and asthma, and that these impairments resulted in marked limitations in interacting and relating with others, and less than marked or no limitations in the other child functional areas.[6] (R. 100-04.) This opinion was affirmed on reconsideration in July 2014. (R. 111-16.)

K.R. began receiving weekly speech therapy from Ms. Villasenor in January 2014, but she was discharged in April 2014 because her attendance dropped to 50 percent due to Plaintiff's lack

---

[5]"An electroencephalogram (EEG) is a test that detects electrical activity in [the] brain. . . . An EEG is one of the main diagnostic tests for epilepsy." https://www.mayoclinic.org/tests-procedures/eeg/about/pac-20393875.

[6]The Social Security regulations consider the following domains of functioning for children: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(d).

of transportation. (R. 580.) Ms. Villasenor noted K.R. made minimal progress: she continued to show delays in processing speech, speech sound production and receptive-expressive language skills, which negatively impacted her socialization, intelligibility and comprehension. (R. 582-83.) Ms. Villasenor recommended K.R. receive speech therapy at school. (R. 583.)

On June 17, 2014, K.R. had another seizure; Plaintiff gave her diazepam to stop the seizure and then brought her to the hospital. (R. 751.) The attending doctor noted K.R. was taking less than the minimum recommended dose of Topamax, so he increased her dose to the recommended minimum. (R. 754.) At follow-up visits with Dr. Ezugha in July 2014 and March 2015, he noted that K.R. was tolerating the increased dose of Topamax with no side effects and no new seizures. (R. 729, 734.) In June 2015, however, K.R. had another seizure "because she missed some dose[s] of antiepileptic medication." (R. 727.) In October 2015 and January 2016, Dr. Ezugha noted that K.R.'s seizures were again well-controlled on Topamax. (R. 718.) However, Plaintiff had concerns that K.R. was having more difficulty than other children learning effectively and conveying information, despite the school's decision not to give K.R. speech therapy. (R. 716, 720.)

On February 23, 2016, Plaintiff and K.R. testified at a hearing before the ALJ. At that time, K.R. was five years old and liked kindergarten. (R. 51.) Plaintiff testified that K.R. was behind in school and still struggling with certain sounds; the school was considering giving her speech therapy. (R. 55, 59, 61, 68.)

On March 9, 2016, K.R.'s kindergarten teacher, Angela Collins, filled out a Teacher Questionnaire which rated whether K.R. had very serious, serious, obvious, slight or no problems in the six Social Security domains of functioning for children: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §

4

416.926a(d). Ms. Collins opined that K.R. had four serious problems in acquiring and using information and four very serious problems and two serious problems in attending and completing tasks. (R. 342-43.) Ms. Collins wrote that K.R. had "a difficult time remembering letters and their sounds," and K.R. "need[ed] extra support for multiple step directions. Very often all class work is taken home to be completed as homework. Student is unable to complete any work given independently with constant repeating of directions." (*Id*.) Ms. Collins found no serious or very serious problems in the other domains of functioning but noted K.R. "need[ed] additional help in all subjects." (R. 344-46.) Ms. Collins added that she could understand almost all of K.R.'s speech and that K.R. "gets along well with her peers. There are no social problems." (R. 345-46.)

On May 19, 2016, the ALJ issued a written opinion denying Plaintiff's application for benefits on behalf of K.R. (R. 118-37.) Plaintiff appealed, and on May 4, 2017, the Appeals Council issued an order vacating the ALJ's decision and remanding the case for two primary reasons. (R. 139-40.) First, the Appeals Council found that the ALJ failed to explain why she did not accept Ms. Collins' assessment, as the "ratings of less than marked limitations in acquiring and using information and attending and completing tasks [did] not reflect the limitations assessed by Ms. Collins," specifically, that K.R. had (1) "serious problems reading and comprehending written material, learning new material, recalling and applying previously learned material, and applying problem-solving skills in class discussions;" (2) "serious problems focusing long enough to finish assigned tasks and completing work accurately without careless mistakes;" and (3) "very serious problems carrying out single and multi-step instructions, completing assignments, and working at a reasonable pace/finishing on time." (R. 139.) Second, the Appeals Council found the ALJ failed to adequately evaluate the State Agency opinions, which assessed K.R. with marked limitations in interacting and relating with others -- greater limitations than the ALJ found. (R. 140.)

5

On May 26, 2017, at the end of first grade, Chicago Public Schools ("CPS") conducted an individual education program ("IEP") meeting for K.R. The IEP plan from this meeting stated that K.R. had delays in academic skills: she had limited math fact knowledge, recognized few letters on sight, and had an even more limited knowledge of letter sounds. (R. 355-56.) K.R. also had deficits in articulation and phonological skills leading to reduced intelligibility and difficulty effectively communicating; K.R. had received weekly speech therapy during the school year, and the IEP recommended she continue to receive weekly speech therapy the following year. (R. 356-57, 367.) The IEP also noted that K.R. had excellent oral processing, followed step by step directions and class routines, and played well with others. (R. 356.)

On January 19, 2018, Plaintiff and K.R. testified at another hearing before the ALJ. K.R. testified that she was still learning her letters, and she liked recess and playing with friends. (R. 79.) Plaintiff testified that K.R. was repeating first grade that year, and K.R. still could not identify all the letters or their sounds. (R. 75-76, 85, 92.)

On February 21, 2018, K.R.'s first-grade teacher, Mr. Mike, filled out a teacher questionnaire. (R. 375.) It was his second year teaching K.R. (*Id.*) Using the same rating system as Ms. Collins, Mr. Mike found that K.R. had three serious problems in acquiring and using information and two serious problems in attending and completing tasks. (R. 376-77.) He wrote that K.R. was "independent and high functioning within our classroom routines and rules. She is doing well in problem solving in math, and excellent in reading comprehension when a story is read aloud"; however, she had "great difficulty in retaining information needed for decoding unfamiliar words, writing and spelling unknown words and remembering sight words." (*Id.*) In addition, K.R. was "simply unable to complete grade level work independently." (R. 377.) Mr. Mike found K.R. had no serious problems in interacting and relating with others, but K.R.

6

"sometimes [had] issues w/language/vocab" that kept "her from communicating/interacting w/other kids." (R. 378.) Mr. Mike could understand almost all of K.R.'s speech when the topic of conversation was known or after repetition, and he could understand 1/2 to 2/3 of her speech when the topic was unknown. (R. 379.)

## II.     ALJ's Decision

On May 9, 2018, the ALJ issued a written opinion finding K.R. "has not been disabled as defined in the Social Security Act since September 30, 2013, the date the application was filed." (R. 39.) The ALJ addressed the three-step sequential evaluation process used to determine whether an individual under the age of 18 is disabled: (1) whether K.R. was engaging in substantial gainful activity (which, of course, as a young child she was not); (2) whether K.R. had a medically determinable impairment or combination of impairments that was "severe"; and (3) whether K.R. had an impairment or combination of impairments that met or medically equaled the severity of a listing, or that functionally equaled a listing. (R. 16-17, citing 20 C.F.R. § 416.924(a)-(d).) If the answer to Step One is no and the answers to Steps Two and Three are yes, and the claimant's impairment meets the duration requirement, the claimant will be found disabled; otherwise, the claimant will be found not disabled. 20 C.F.R. § 416.924(a). The duration requirement is the same for minors and adults: the impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909.

At Step Two, the ALJ found K.R. had the following severe impairments: history of hypoxic encephalopathy, epilepsy, asthma, and speech and language delay. (R. 19.) At Step Three, however, the ALJ determined that K.R.'s impairments did not meet or medically equal the severity of a listed impairment or functionally equal the severity of a listing. (R. 19-21.)

7

To functionally equal the severity of a listing, the claimant's impairment or combination of impairments must result in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one of the domains.[7] *See* 20 C.F.R. § 416.926a(d). The ALJ found that K.R. had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, caring for herself, and health and physical well-being, and no limitations in moving about and manipulating objects. (R. 23.) The first three domains are relevant to Plaintiff's appeal here.

The ALJ found "the evidence does not support marked limitation" in acquiring and using information because "[t]hough the claimant's speech and language delay has imposed some limitations . . . her math skills have improved, her oral comprehension was noted to be excellent, [ ] her school did not indicate the need for special education services," and her most recent IEP indicated she was "only seeking speech therapy once a month." (R. 31.) The ALJ acknowledged K.R. made minimal progress in speech therapy in 2013 and 2014, but the ALJ focused on reports from 2017 showing K.R. had normal speech and Mr. Mike's 2018 opinion that he could understand K.R.'s speech almost all the time when the topic of conversation was known. (R. 20, 23-24.) The ALJ found that Plaintiff's testimony that K.R. was repeating first grade was undermined by the May 2017 IEP, Mr. Mike's opinion, and notes from 2015 and 2016 indicating that K.R.'s school did not think K.R. needed speech therapy. (R. 30 and R. 25, citing R. 711, 716, 721.)

In the domain of interacting and relating with others, the ALJ acknowledged that K.R. had speech deficits that made it difficult for her to effectively communicate in the academic setting. (R. 34.) However, the ALJ relied on "recent testing [that] showed the claimant had age-appropriate

---

[7]A marked limitation "interferes seriously" and an extreme limitation interferes "very seriously" with a child's ability to independently initiate, sustain or complete activities. 20 C.F.R. §§ 416.926a(e)(2), (e)(3). A "less than marked limitation" means a child's impairment does not "interfere[] seriously with [her] ability to independently initiate, sustain, or complete activities." *Id*.

8

oral motor, voice and fluency skills." (*Id*.) In addition, the ALJ noted that Plaintiff testified she could understand K.R. most of the time, and Mr. Mike found less than marked limitations in this domain. (*Id*.)

With regard to attending and completing tasks, the ALJ noted both Mr. Mike and Ms. Collins found K.R. had problems completing classwork and homework. (R. 32.) However, the ALJ relied on Mr. Mike's later opinion, which the ALJ found "indicated an improvement in the claimant's problems in this domain" and "showed no limitations with the rest of her activities with attending and completing tasks." (R. 32-33.) Thus, the ALJ concluded that "the record support[ed] no more than a finding of less than marked limitation." (R. 33.)

The ALJ gave Mr. Mike's opinion "great weight" because it was "the most recent Teacher Questionnaire in the file," and he had taught KR for two years. (R. 27.) By contrast, the ALJ gave "some weight" to the March 2016 teacher questionnaire completed by Ms. Collins because "more recent records from Mr. Mike indicate improvement" and the more recent IEP "show[ed] the claimant was in regular education and only receiving speech therapy once a month." (R. 29.) The ALJ also gave only "some weight" to the December 2013 and July 2014 opinions of the non-examining State Agency medical consultants that K.R. had marked limitations in interacting and relating with others, because "these findings were consistent with the evidence that was available at the time they were rendered," but later evidence "showed only less than marked limitations" in this domain. (*Id*.) Thus, the ALJ found K.R. was not disabled from September 30, 2013, the date the application was filed, through May 9, 2018, the date of the opinion.

### III. Analysis

Plaintiff now seeks reversal and remand of the ALJ's opinion. The Court's review of the ALJ's decision "is deferential; we will not reweigh the evidence or substitute our judgment for

9

that of the ALJ." *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017). "The ALJ's decision will be upheld if supported by substantial evidence, which means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Jozefyk*, 923 F.3d at 496 (internal citations and quotations omitted). "ALJs need not address every piece of evidence in the record, but an ALJ may not ignore an entire line of evidence contrary to her ruling." *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir. 2020) (internal citation omitted).

In this case, however, the ALJ appeared to overlook most of the evidence of K.R.'s impairments preceding the 2017 IEP, despite ruling that K.R. did not meet the definition of disability since September 30, 2013. Rather than evaluate the entire period of K.R.'s alleged disability, the ALJ dismissed earlier evidence of the severity of K.R.'s disability because the ALJ found later evidence of improvement. As the definition of disability would be met if K.R.'s impairments met or functionally equaled a listing for a continuous period of at least 12 months, the ALJ erred by ignoring evidence from more than three years of K.R.'s alleged period of disability. *See* 20 C.F.R. §§ 416.924(a), 416.909. Most importantly, the ALJ failed to adequately evaluate Ms. Collins' March 2016 opinion and the non-examining State Agency opinions from December 2013 and July 2014.

The ALJ stated that she gave only "some weight" to Ms. Collins' March 2016 opinion because "more recent records" -- Mr. Mike's February 2018 evaluation and the May 2017 IEP -- "indicate improvement." (R. 29.) However, whether or not K.R. improved toward the end of her alleged period of disability does not excuse the ALJ's failure to address the limitations earlier assessed by Ms. Collins. Ms. Collins opined that K.R. had multiple serious problems in acquiring and using information and very serious problems in attending and completing tasks, which the Appeals Council explained indicated K.R. was more limited than the ALJ's findings of less than

10

marked limitations in these areas. As findings of marked limitations in two of the six domains of functioning for a continuous period of at least 12 months would lead to a finding that K.R. was disabled, the ALJ's failure to adequately address the findings in Ms. Collins' opinion leaves the Court "unable to conclude that the ALJ's determination that [K.R.] was not disabled at any point during the [alleged period of disability] was supported by substantial evidence." *Walker v. Berryhill*, 900 F.3d 479, 484 (7th Cir. 2018). Accordingly, remand is warranted on this basis. *See also Calhoun v. Colvin*, 959 F. Supp. 2d 1069, 1075-76 (N.D. Ill. 2013) (remanding where the ALJ focused on the asserted absence of a disability as of the date of the hearing and failed to evaluate whether the claimant was disabled for any earlier 12-month period).[8]

Similarly, instead of evaluating whether the State Agency opinions assessing K.R. with marked limitations in interacting and relating with others were supported by the evidence at the time the opinions were issued, the ALJ stated simply that she gave only "some weight" to these opinions because later evidence -- from 2017 and 2018 -- "showed only less than marked limitations" in this domain. (R. 29.) The Commissioner contends that the ALJ adequately explained why she gave some weight to the state agency opinions, including that K.R.'s ability to relate to others improved as her speech delay improved, as shown by the 2017 IEP and Mr. Mike's evaluation. (D.E. 24: Gov.'s Mem. in Supp. of Mot. at 7.) However, as with Ms. Collins' opinion, the ALJ's reliance on later evidence to show improvement does not cure the ALJ's failure to evaluate whether K.R. was disabled during another 12-month period earlier in her alleged period of disability. Thus, the ALJ's failure to adequately address the State Agency opinions also leaves

---

[8]In its response, the Commissioner argues that Ms. Collins' opinion did not reflect marked limitations in acquiring and using information and in attending and completing tasks. (D.E. 24: Gov.'s Mem. in Supp. of Mot. at 4.) We decline to consider that argument because it "violates the rule of *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1760, 91 L.Ed. 1995 (1947), because the ALJ's decision cannot be defended on a basis not articulated in her order." *Hardy v. Berryhill*, 908 F.3d 309, 313 (7th Cir. 2018).

the Court "unable to conclude that the ALJ's determination that [K.R.] was not disabled at any point during the [alleged period of disability] was supported by substantial evidence." *Walker*, 900 F.3d at 484.[9]

## CONCLUSION

Therefore, the Court grants Plaintiff's request for remand (D.E. 13) and denies the Commissioner's motion to affirm. (D.E. 23.)

ENTER:

_____

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: June 11, 2020**

---

[9] Although this Court is remanding based on the ALJ's failure to adequately address evidence from the first few years of K.R.'s alleged period of disability, on remand, the ALJ should also review K.L.'s grade level and performance during the 2017-2018 school year. At the hearing in the winter of 2018, Plaintiff testified that K.L. was repeating first grade. That testimony is consistent with Ms. Collins' report stating that she taught K.L. kindergarten during the 2015-2016 school year and Mr. Mike's report stating that 2017-2018 was his second year teaching first grade to K.L. Nevertheless, the ALJ found Plaintiff's testimony that K.R. "was repeating the 1st grade . . . was not supported by the May 2017 IEP nor by Mr. Mike's Teacher Questionnaire," which the ALJ believed "show[ed] the claimant was in regular education and only receiving speech therapy once a month." (R. 29-30.) As it currently stands, this determination is inconsistent with the evidence, and the ALJ should more fully explain this conclusion on remand.